[No. 32581.   *En Banc.*   June 30, 1955.]

THE STATE OF WASHINGTON, *Appellant,* v. CYRUS E. MAXFIELD, *Respondent.*[1]

[1]Reported in 285 P. (2d) 887.

*Charles O. Carroll, F. A. Walterskirchen,* and *Keith M. Callow,* for appellant.

*Christ D. Lillions,* for respondent.

*Geo. H. Rummens, amicus curiae.*

WEAVER, J.—Defendant was charged by three separate counts with the crimes of (1) manslaughter, (2) practicing medicine without a license, and (3) practicing chiropractic without a license. The jury found him guilty on all three counts. Judgment and sentence have been entered on counts II and III, from which there is no appeal.

The trial court granted defendant's motion for a new trial on count I (manslaughter) on the ground that the last sentence of instruction No. 17 to the jury did not correctly state the law. The state appeals.

Lucile Pedersen Cook died November 17, 1952, of a diabetic acidosis. She was twenty-eight years old and had suffered from diabetes since she was thirteen. For almost fifteen years, she had received treatment and was under

the care of one or more doctors of medicine. She was on a special diabetic diet, prescribed by the Virginia Mason clinic in Seattle, and had been taking prescribed amounts of insulin ever since she was afflicted with the disease.

Mrs. Cook became dissatisfied with the treatment prescribed for her by the medical profession, and on September 13, 1952, accompanied by her husband, she consulted the defendant. She gave him a history of her life as a diabetic and sought his aid in combating her disease. He informed Mrs. Cook and her husband that he had treated a number of people for diabetes and that some of his patients had responded so well that they were no longer required to take insulin. A series of three treatments a week was arranged, which involved manipulations of the spine. He allowed her to reduce her intake of insulin, which resulted in an unfavorable reaction in her blood-sugar tests. Defendant gave her an herb tea and suggested that it, in conjunction with his manipulations, would bring her blood-sugar count under control.

Upon reducing the insulin intake, and under defendant's treatments, she became groggy and listless, acquired a tremendous thirst, had difficulty breathing, and vomited frequently. Defendant told Mr. Cook not to be concerned over his wife's condition, since her body was combating the poisons and foreign matter in her system, of which insulin was one.

On the morning of November 16, 1952, Mr. Cook was unable to arouse his wife and called defendant, who attempted to arouse her by manipulating her spine and rubbing her legs and arms. Decedent's husband gave her chicken broth and insulin. Defendant declined Mr. Cook's suggestions, during the day, to summon an ambulance to take his wife to the hospital, although twice during the day defendant could not feel her pulse. Finally, about seven o'clock, an ambulance was called and she was taken to the hospital in a diabetic coma. She was immediately given three hundred fifty units of insulin, and intravenous fluids. Five or six hours after admission, she died of diabetic acidosis.

From the testimony of doctors of medicine, called by the state as expert witnesses, it appears that diabetic acidosis is caused by an imbalance between the need and the supply of insulin in the body of a diabetic; that the decedent was in a diabetic coma when she arrived at the hospital, and had been in that condition for about twenty-four hours prior to her admittance.

The trial court granted a motion for a new trial on count I of the information on the sole ground that the italicized portion of instruction No. 17, *infra,* did not correctly state the law and was prejudicial to the defendant.

Instruction No. 17 is as follows:

"There is no implied warranty on the part of any practitioner of any of the healing arts, who, within the limits of his own field, undertakes to cure, other than the use of such ordinary skill and care as are generally possessed and exercised by practitioners in the same field in the locality where he practices. You are further instructed that when any practitioner of any of the healing arts steps outside the limits of his field, he must exercise that degree of skill and care which is ordinarily possessed by the practitioner into whose field he has entered. *You are further instructed that if, in the highest level of medical science, there is a generally recognized treatment for the disease or organic disorder which he undertakes to cure, he must in the exercise of ordinary skill and care adopt and use with ordinary skill and care such generally recognized treatment.*"

The objection taken to the instruction, at the time of trial, was that there was no showing that there is anything called "the highest level of medical science" and the phrase is a "misleading and improper designation, and . . . brings in a highly prejudicial phase into the jury's deliberations . . ."

The gravamen of count I of the information is that defendant, representing himself as a person qualified to treat the disease known as diabetes, unlawfully and feloniously caused the death of decedent *"through culpable negligence, gross ignorance and the lack of ordinary knowledge of medicine and surgery . . ."*

Doctors of medicine testified that the recognized treatment for diabetes, in the field of medicine in the community in which defendant held himself out as capable and qualified to treat this disease, is the use of insulin and diet control.

Defendant admitted that he did not hold a license from the state of Washington to practice any of the healing arts. (He was licensed by the city of Seattle "to perform manipulations and gymnastics; scientific manipulation and remedial massage upon the bodies of individuals.")

However, under the allegations of count I, whether or not defendant is licensed to practice any of the healing arts is not an element of the charge, nor is it a defense thereto, for the absence of such a license could not create negligence where none exists, nor could it negate negligence where it does exist.

Further, it matters not, under the charge of count I, whether the accused holds the highest academic degree in the field of the healing arts and sciences, or holds no degree at all; if there is evidence to support the material allegations of the grievance, a question of fact is presented for the jury.

In addition, it is not material whether the accused purports to practice in one or another of the various fields of the healing arts, as recognized by the statutes of this state. If there is evidence (as there is here) from which the jury can find (as it did in this case) that the accused purported to practice medicine then "he must exercise that degree of skill and care which is ordinarily possessed by the practitioner into whose field he has entered."

■ In this state, only physicians and surgeons, commonly called "doctors of medicine," have unlimited licenses to practice medicine and surgery. Such practice is defined in Rem. Supp. 1947, § 10008 [cf. RCW 18.71.010]. All other licenses for practicing the healing arts are limited in scope.

This is not a civil action for damages based upon alleged malpractice. See *Kelly v. Carroll*, 36 Wn. (2d) 482, 219 P. (2d) 79, 19 A. L. R. (2d) 1174 (1950), and cases cited. We

are concerned here with the standard of care which must be exercised and the criminal liability which may flow from a failure to exercise it, by one who is *charged with acting within that field of medicine,* which is defined by statute as the area in which the holder of an unlimited license to practice medicine and surgery may act. See *State v. Karsunky,* 197 Wash. 87, 84 P. (2d) 390 (1938), and cases cited.

When that portion of instruction No. 17 which is under attack is silhouetted against this background of the law and the facts as disclosed by the evidence, it becomes apparent that the phrase "in the highest level of medical science" (a phrase appearing in the *Kelly* case, *supra*) could only be construed by the jury to mean in the field of medicine as practiced by doctors of medicine. This conclusion is fortified by reading the entire instruction and by giving equal weight to the sentence preceding the questioned portion, which is as follows:

"You are further instructed that when any practitioner of any of the healing arts steps outside the limits of his field, he must exercise that degree of skill and care which is ordinarily possessed by the practitioner *into* whose field he has entered."

This is further qualified, of course, by the first sentence of the instruction which requires that the standard be that of the locality.

Prejudicial error is not to be based upon a permissible choice of language in an instruction. We think the word "highest" is not inappropriate to express a comparison between the field of the healing arts, represented by the doctors of medicine called as expert witnesses by the state, and the field of activity of one not authorized to practice therein. The instruction is, therefore, a correct statement of the law.

The assignments of error directed to instruction No. 17 are not well taken. Giving instruction No. 17 was not prejudicial error. A new trial should not have been granted.

The same conclusion may be reached on this phase of the case, even though the argument be adopted that in-

struction No. 17 is not a correct statement of the law as it applies to a practitioner who holds a limited license—defined by statute—in a particular field of the healing arts. Was the instruction prejudicial to this defendant? We think not.

Not being licensed by the state of Washington to practice in *any* of the healing arts, he is not entitled to invoke a standard of care less rigid than that required of those practitioners holding unlimited licenses (physicians and surgeons) to practice the healing arts.

This, in effect, is what the last sentence of instruction No. 17 accomplishes. The fact that, in setting this standard, the instruction refers to the duties of practitioners in a *particular* field, rather than to the duties of one who is not licensed to practice in *any* field, has not prejudiced the defendant.

█ On appeal from an order granting a new trial for a specific reason, the party, upon whose motion a new trial was granted, may urge before this court, in support of the order, any of the grounds *stated* in *his motion. Larson v. Seattle,* 25 Wn. (2d) 291, 171 P. (2d) 212 (1946). We cannot consider the arguments in that portion of defendant's brief on appeal which go beyond the grounds stated in his motion for a new trial.

Defendant's motion was based upon (1) alleged misconduct of the jury; (2) error of law occurring at the trial and excepted to by the defendant; and that (3) the verdict is contrary to law and evidence.

█ The first ground of alleged misconduct of the jury was based upon an affidavit of counsel, stating that he had interviewed several members of the jury and was informed by one juror that he did not think the defendant guilty of manslaughter, but he so voted because the last two ballots came so fast that he was pressured into changing his mind.

We find no merit in this contention for three reasons. First, the attorney's affidavit is hearsay and incompetent to impeach the verdict of the jury. *State v. Patterson,* 183 Wash. 239, 48 P. (2d) 193 (1935). Second, a juror, even by

his own affidavit, cannot impeach his verdict in such a manner. *Russell v. Grandview,* 39 Wn. (2d) 551, 557, 236 P. (2d) 1061 (1951). Third, we cannot consider the affidavit because it is not included in the statement of facts sent to this court (*Wheeler v. Wheeler,* 37 Wn. (2d) 159, 222 P. (2d) 400 (1950); *Lindsey v. Elkins,* 154 Wash. 588, 616, 283 Pac. 447 (1929)), nor does it meet the requirements of the exception to the rule discussed in *State v. Fackrell, Jr.,* 44 Wn. (2d) 874, 879, 271 P. (2d) 679 (1954).

■ Defendant's trial counsel asked for a mistrial when it appeared that several of the jurors had "glanced" at a newspaper account of the trial. In the alternative, counsel requested that the members of the jury be instructed that, if they did see the article, "they are not to consider it in any way." The trial judge denied the motion for a mistrial and instructed the jury as requested. This cannot now be urged in support of a motion for a new trial. In addition, the newspaper article is not in the record before us. We cannot guess at its contents or presume, in the absence of proof, that defendant was prejudiced by it.

■ In support of his motion for a new trial, defendant urges that the trial court erred, as a matter of law, when it denied his motion, based upon an affidavit of prejudice directed to the trial judge, to transfer this cause.

This contention is without merit. If timely made, such a motion must be granted as a matter of right. *State ex rel. Mauerman v. Superior Court,* 44 Wn. (2d) 828, 830, 271 P. (2d) 435 (1954).

Prior to the time defendant filed his affidavit of prejudice, he had requested a continuance which the trial judge granted. The motion for continuance invoked the discretion of the trial court. *Donaldson v. Greenwood,* 40 Wn. (2d) 238, 242, 242 P. (2d) 1038 (1952). The motion for transfer was not timely for it was made after the judge had "made any order or ruling invoking discretion. . . ." RCW 4.12.050 [*cf.* Rem. Supp. 1941, § 209-2].

As to defendant's third ground in support of his motion

for a new trial, we are satisfied that the record amply supports the verdict.

The order granting a new trial is reversed, and the trial court is directed to enter judgment and sentence upon the verdict of the jury.

MALLERY, SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

HAMLEY, C. J. (concurring in the result)—I do not agree that the last sentence of instruction No. 17 is a correct statement of the law. For the reasons stated in the majority opinion, however, I do not believe that the giving of this instruction was prejudicial error.

ROSELLINI and HILL, JJ., concur with HAMLEY, C. J.

FINLEY, J. (dissenting)—On a motion for a new trial, the trial judge was of the view that the giving of instruction No. 17 (quoted in the majority opinion) was prejudicial error. He granted a new trial. I think his action was eminently proper. The majority take the view that instruction No. 17 was not prejudicial, that it properly stated the law of this state. I disagree. For a discussion of the problem here involved, see an article entitled, "The Standard of Care of the Drugless Healer," 27 Wash. L. Rev. 38, 59.

The legislature of this state has clearly recognized the existence of several branches of the healing arts. It has provided specifically for the licensing of practitioners in the several branches. But the legislature has not classified the branches of the healing arts on the basis of levels or degrees of learning or competence or in any preferential sequence, indicating that one branch is the highest, another the lowest, with others in between the two extremes, in so far as learning, competence, and the ability to treat human maladies are concerned. It is true there are certain restrictions, in that each branch is expected and required to practice within the scope of its particular philosophy, and to use techniques in the treatment of disease that are generally approved and used by the particular branch. On the other

hand, instruction No. 17 characterizes the medical branch as the highest branch of the healing arts. Implicit in this is the suggestion that other branches of the healing arts are somewhat suspect, and that practitioners therein are somewhat less competent and to be regarded with some apprehension, to say the least. I think the reference in instruction No. 17 to "the highest level of medical science," and the implications to be deduced therefrom, are inappropriate and were prejudicial error in so far as respondent is concerned.

The pertinent question is not whether one branch of the healing arts is the highest or not, but whether there is a generally recognized specific for the treatment of diabetes, and whether respondent could have used it, or was culpable for preventing its use, in the treatment of his patient. A closely related question is whether the treatment administered to Mrs. Lucile Cook by the respondent was generally approved and used by the chiropractic branch of the healing arts. In my opinion, an instruction framed along these lines would have been proper, whereas instruction No. 17 was not.

It is true that respondent was not licensed to practice in any branch of the healing arts. However, he was charged and stands convicted of practicing (a) medicine, and (b) chiropractic, without a license, and he is not appealing therefrom. From reading the record, it appears to me that respondent used very bad judgment—in fact, it was about the worst possible— in attempting to treat Mrs. Cook. But this consideration is a matter for the jury, and the significant question for the court to decide in this appeal is whether the giving of instruction No. 17 was prejudicial error.

If instruction No. 17 is to become the law of this state, then nonmedical practitioners of the healing arts must refrain from treating their patients, or, in the uncomfortable alternative, must practice their profession at their own peril, whenever the medical profession recognizes a different method of treatment for a particular human ailment or

malady. Obviously, there are many instances where the recognized medical method of treatment is different from the method of treatment recognized by other branches of the healing arts. To be safe, and to conform to the law, as stated in the majority opinion, a nonmedical practitioner of the healing arts, although licensed, would have to limit his practice to those ailments for which there is no cure known and recognized by the medical profession.

For the reasons indicated, I dissent.