[No. 55836–1.   En Banc.   December 14, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. WILFRED POPE JACKMAN, *Petitioner.*

*Appelwick, Trickey, Sluiter & Spicer* and *Michael J. Trickey,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for respondent.

DURHAM, J.—After a jury convicted Wilfred Pope Jackman of first degree robbery, the trial court ordered a new trial, citing jury misconduct, newly discovered evidence and a misstatement of fact by the prosecutor during closing argument. The Court of Appeals, in an unpublished opinion, reversed the order granting a new trial and reinstated the guilty verdict. *State v. Jackman,* noted at 53 Wn. App. 1002 (1988). We granted Jackman's petition for review, 112 Wn.2d 1009 (1989), and now affirm the Court of Appeals.

I

On August 29, 1985 at about 2 p.m., a man with a knife robbed the cashier at Roy's Grocery in West Seattle. After collecting between $50 and $100 from the store's register, the man fled on foot down the street. He was chased by two local residents responding to the cashier's screams, but escaped in an orange Oldsmobile in the company of two other men.

One of the residents who had chased the robber provided police with a description of the car and its license number. Having determined Jackman to be the owner of the car, police prepared a photo montage that included his photograph.[1] Three robbery witnesses identified Jackman as the robber from the montage. A fourth pointed to another photo in the montage as being that of the robber. Jackman was then charged with the robbery.

Jackman's trial was held in late July 1986. The State presented testimony of five witnesses who had seen the robber in or around the grocery, and who, with varying degrees of certainty, identified Jackman as the robber. Jackman put on one eyewitness who testified that the robber was a man named George D.

---

[1] On the night of the robbery, Jackman suffered a broken neck in an automobile accident. He was bedridden during the police investigation of the robbery and, thus, unavailable to participate in a lineup for in-person identification.

Jackman himself also testified, as follows: On the day of the robbery, he drank and played pool at a bar from about 10:30 a.m. until around 3 p.m. Early in the day, he loaned his car to a man named Mike, whose last name sounds like, and whose nickname is, "Pineapple". Jackman left the bar at around 3 o'clock in the company of James Beckwith. The pair walked to the home of Frank Davis, and later set out in Davis's car to see if Pineapple had returned Jackman's car. Jackman fell asleep in the backseat of Davis's car and as the result of an accident, did not awaken until several days later.

One of Jackman's intended witnesses, LuAnne Tracy, did not appear for trial. Tracy, who was down the block from the grocery at the time of the robbery, informed the police officer conducting the initial investigation that George D. had committed the robbery. In a posttrial deposition, Tracy claimed she told the officer that she had seen George D. run by and "take off" in an orange car. However, the officer understood Tracy to say that she had not seen the robber, but had identified George D. from other witnesses' descriptions. On this understanding, and after a review of Department of Licensing records revealed that George D.'s description did not match eyewitness descriptions of the robber, the police eliminated George D. as a possible suspect, and did not include his photograph among those shown to eyewitnesses for identification.

Closing arguments focused on the witnesses' identifications of the robber. The prosecutor noted that the jury "heard five people, five independent witnesses, come in and tell you that [Jackman] was the man that robbed that store." After recounting their testimony, she remarked:

> Now, that's quite a bit of evidence. But not only that, the other two men who were in the car with the Defendant matched the description that the Defendant gave us of the two men that he was with on that day.

Jackman's attorney refuted this rendition of the evidence, noting that Jackman was with James Beckwith, a black man, on the day of the robbery, but that an eyewitness had

seen the robber flee in the company of two white men. In rebuttal, the prosecutor stood by her account:

> The way that I remember the testimony was that [the witness] said the driver was a white man with short hair and the passenger in the car was a black man and that's the reason that the similarity to what the Defendant said about who he was with that day struck me because that was a description that matched the people that he was with that night.

Neither of these recollections was in fact correct. The eyewitness had testified that there was "a male in the back rear and there was a white male in the front seat" of the car in which the robber fled. Thus, the evidence presented at trial did not support the prosecutor's claim that the robber was accompanied by a black man and a white man, or Jackman's counsel's claim that the robber fled with two white men.

Following closing arguments, the jury retired for lunch and deliberations at 12:08 p.m. A verdict of guilty was returned at 2:50 p.m. Jackman's attorney then moved for an arrest of the judgment and/or a new trial. On January 5, 1987, after a hearing, the trial court granted Jackman's motion for a new trial, stating essentially three reasons for its decision: (1) The jury had "considered a matter outside of the law and evidence in this case in order to improperly hasten their verdict." The trial court held that this constituted jury misconduct under CrR 7.6(a)(2). (2) Testimony by LuAnne Tracy, who was unavailable during the trial, "if provided to the jury at a second trial appears to have a high probability of changing the result of the trial in this case." Tracy's testimony, the court held, falls within the category of newly discovered evidence described in CrR 7.6(a)(3). (3) Accumulated errors, including the two errors described above and also "the misstatement in closing argument of a significant item of testimony" resulted in substantial justice not being done, justifying a new trial pursuant to CrR 7.6(a)(8).

The Court of Appeals found that none of these grounds were sufficient to justify the grant of a new trial. We agree.

## II

A trial court's decision granting a new trial will not be disturbed on appeal unless it is predicated on erroneous interpretations of the law or constitutes an abuse of discretion. *E.g., Johnson v. Howard,* 45 Wn.2d 433, 436, 275 P.2d 736 (1954); *State v. Williams,* 96 Wn.2d 215, 221–22, 634 P.2d 868 (1981). With these basic standards in mind, we consider each of the grounds upon which the trial court in this case decided that a new trial was necessary.

### JURY MISCONDUCT

In concluding that jury misconduct had occurred, the trial court relied on affidavits from a juror, Susan Palmer, and the trial court bailiff, Cheryll Russell, indicating that the jury might have hastened its verdict because the jury foreman was overdue for a vacation. Palmer stated that "members of the jury knew that Mr. Edward Lockner was overdue for his vacation when we elected him to be the foreman of the jury". Russell said she heard from a woman juror "that the jury elected Mr. Edward Lockner foreman of the jury because they knew that he had been scheduled to go on vacation the weekend before and they felt he would not waste time in guiding their deliberations (or words to that effect)". As additional support for its finding of jury misconduct, the court noted "the complexity of issues in this case and the relatively short deliberation time".

Reliance on the two affidavits was legal error, as neither one provides an appropriate basis for establishing jury misconduct. The affidavit of Russell, the trial court bailiff, is inadmissible hearsay. *See, e.g., Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 177, 422 P.2d 515 (1967); *Maryland Cas. Co. v. Seattle Elec. Co.,* 75 Wash. 430, 436–38, 134 P. 1097 (1913). The juror Palmer's affidavit is also inadmissible to prove misconduct because it asserts matters inhering in the verdict.

The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or

the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict.

*Cox v. Charles Wright Academy, Inc., supra* at 179–80; *see also Gardner v. Malone,* 60 Wn.2d 836, 842, 376 P.2d 651 (1962) (allegation that jurors "had *omitted to consider* important evidence or issues . . . or had by any other *motive or belief been led to their decision"* is insufficient to support a motion for a new trial) (quoting 8 J. Wigmore, *Evidence* § 2349, at 681 (1961)).

█ The second ground upon which the trial court based its finding of misconduct—that the jury reached its verdict quickly—similarly does not justify the grant of a new trial. Our decisions are clear that misconduct cannot be inferred merely because deliberations were of short duration. In *Johnson v. Howard, supra,* for example, we reversed a new trial order rendered on the basis that substantial justice was not done when jury deliberations following a 4–day trial of an automobile accident action lasted only 2 hours and 19 minutes.

The length of time devoted to jury deliberations is not a reliable guide to the measure of justice which has been achieved. In our opinion, the fact that the jury here returned a speedy verdict does not support the court's conclusion that substantial justice has not been done.

*Johnson,* 45 Wn.2d at 446–47. *Johnson's* reasoning was deemed controlling in another automobile accident case in which the jury had deliberated only 13 or 14 minutes, with special note taken that by statute "'the jury may either decide in the jury box or retire for deliberation.' RCW 4.44.300." *Casey v. Williams,* 47 Wn.2d 255, 258, 287 P.2d 343 (1955); *see also State v. Maxfield,* 46 Wn.2d 822, 828–29, 285 P.2d 887 (1955) (new trial not necessary when a juror's vote was compelled by lack of time).

Jackman contends that precedent for attacking hastened deliberations can be found in *State v. Crowell,* 92 Wn.2d 143, 594 P.2d 905 (1979) and *State v. Boogaard,* 90 Wn.2d

733, 585 P.2d 789 (1978). In these cases, new trials were deemed necessary when in one case a bailiff (*Crowell*) and in the other a judge (*Boogaard*) made comments to the jury that "can be viewed as designed to hasten the jury's verdict." *Crowell*, at 148. Important distinctions exist, however, between a case where a court official urges jurors to haste and a case where the jurors have their own motives for haste. In the former situation, jurors suffer an outside influence on their decisionmaking; in the latter, only their own "motives[,] . . . intentions and beliefs" guide them. *Cox v. Charles Wright Academy, Inc., supra* at 179–80; *see also Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 137, 750 P.2d 1257, 756 P.2d 142 (1988) (describing other situations in which outside influences on jury deliberations provide grounds for a new trial).

In summary, the trial court committed legal error in finding jury misconduct based on the affidavits of the bailiff and a juror, the former being inadmissible hearsay, and the latter stating matters inhering in the verdict. Insofar as the trial court's order of a new trial rested on the ground that the jury's deliberations were too hasty, it abused its discretion.

### NEWLY DISCOVERED EVIDENCE

■ CrR 7.6(a)(3) authorizes a trial court to grant a new trial to a criminal defendant when he obtains "[n]ewly discovered evidence . . . which he could not have discovered with reasonable diligence and produced at the trial". As we have interpreted this provision, granting a new trial is appropriate only when the evidence in question:

> (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching. The absence of any of the five factors is grounds for the denial of a new trial, or the reversal of the grant of a new trial.

(Citations omitted.) *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981); *see also State v. Harris*, 106 Wn.2d 784, 794–95, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940

(1987); *State v. Adams,* 181 Wash. 222, 229, 43 P.2d 1 (1935).

The trial court held that the testimony of LuAnne Tracy satisfies all five of these factors, and thus constitutes newly discovered evidence of the sort sufficient to justify granting a new trial pursuant to CrR 7.6(a)(3). Reversing, the Court of Appeals held that the first and last factors had not been met. Tracy knows nothing more or different about George D.'s involvement in the grocery robbery than had already been testified to at trial by another witness, the court noted. Thus, the court concluded, "[t]he evidence does not support the finding that Tracy's testimony probably would have changed the result or the finding that her testimony was not merely cumulative."

We agree with the Court of Appeals that Tracy's testimony does not constitute newly discovered evidence within the meaning of CrR 7.6(a)(3). Unlike the Court of Appeals, however, we do not address the cumulativeness of Tracy's testimony. Rather, we find that Jackman failed to exercise reasonable diligence in obtaining Tracy's attendance at trial.

On May 12, 1986, Tracy was personally served with a subpoena to appear at trial on June 3, 1986. To accommodate another defense witness, trial was continued to July 16. Personal service on Tracy of a new subpoena was not effected, however. A second subpoena for the new trial date was simply mailed, together with a letter instructing Tracy to contact counsel if she had any questions. Tracy did not respond, and a defense investigator tried in vain to locate her just before trial, discovering that Tracy had left her last known residence and that the police were investigating her for an unspecified offense. On July 22, the first day of trial, Jackman requested and the trial court issued a warrant for Tracy's arrest as a material witness. Further efforts to locate Tracy were unsuccessful. Nevertheless, Jackman's counsel never requested that the trial be continued until Tracy could be located, electing instead to proceed to a verdict without her.

In these circumstances, we do not believe the standard of due diligence has been met. Our court rules are clear in their requirement that subpoenas be served personally. *See* CrR 4.8; CR 45. Service by mail is not in compliance with these rules and thus "cannot constitute 'due diligence.'" *State v. Adamski,* 111 Wn.2d 574, 577, 761 P.2d 621 (1988).

We do not rest our decision solely on the failure of proper service of the second subpoena, however, for that would imply resolution of a significant issue of first impression that the parties have not addressed: whether and how long a subpoena (in this case, the first one issued) remains in effect beyond the date it commands a witness to appear. It has been held by some courts that a subpoena compels a witness "to remain in attendance until excused by the court or by the party who has summoned him." *Reiman v. Breslin,* 175 N.J. Super. 353, 357, 418 A.2d 1293 (1980). It has also been held, however, that when the date of appearance specified in a subpoena passes, the witness's attendance is not compelled. *O'Brien v. Walker,* 49 Ill. App. 3d 940, 948–49, 364 N.E.2d 533 (1977). The peculiar language of our rules governing service of subpoenas, *see* CR 45(c), (g); CrR 6.12(b), does not obviously embrace either of these interpretations. Nor do the above cited or other relevant cases of which we are aware directly address the question of whether a new subpoena must be issued upon the setting of each new trial date.[2]

Our conclusion that due diligence was not exercised here is grounded not only on the failure of proper service of the second subpoena, but also on Jackman's failure to seek a continuance in order to obtain Tracy's appearance. The trial court on several occasions inquired about the status of defense and police efforts to locate Tracy, but while reporting that such efforts had been unsuccessful, Jackman's

---

[2]At oral argument, counsel for the State indicated that it is the practice of the King County Prosecutor's Office to issue new subpoenas each time a trial is continued more than 14 days. Counsel indicated that to her knowledge the legal necessity of this practice has not been tested in court.

counsel never requested more time to pursue them. "[H]aving made no request of the court for a continuance, or for even some delay, to afford an opportunity to find his witness[], [Jackman] cannot contend that the court erred in denying him any relief, as he asked for none."[3] *State v. Douglas,* 193 Wash. 425, 430, 75 P.2d 1005 (1938); *see also State v. Bengston,* 159 Wash. 296, 298, 292 P. 1107 (1930); *State v. Gumm,* 141 Wash. 355, 357, 251 P. 273 (1926).

### PROSECUTOR'S MISSTATEMENT DURING CLOSING ARGUMENT

The trial court found that the prosecutor's misstatement of a witness's description of the two men in whose company the robber fled constituted error that, when combined with the other errors found, denied Jackman substantial justice. The court based this ruling in part on a juror's affidavit stating that the prosecutor's misrepresentation of the evidence was accepted by the jurors during deliberations.

█ Reliance on the juror's affidavit was improper, because the averment in the affidavit concerns a matter inhering in the verdict. *See, e.g., Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967). Juror affidavits are admissible only to establish misconduct, but are inadmissible to the extent they "say what effect the remarks may have had upon [the] verdict . . .". *State v. Parker,* 25 Wash. 405, 415, 65 P. 776 (1901); *see also Maryland Cas. Co. v. Seattle Elec. Co.,* 75 Wash. 430, 436, 134 P. 1097 (1913); *Gardner v. Malone,* 60 Wn.2d 836, 839–43, 376 P.2d 651 (1962). The juror's affidavit upon which the trial court relied thus would be admissible if it asserted facts establishing the prosecutor's misstatement. It is not

---

[3]This is not to say, of course, that the failure to seek a continuance was unsound trial practice. Tactical decisions made by trial counsel are frequently based on facts not found in an appellate record and reflect the opinion, experience, and judgment of the individual attorney. We cannot, and should not, second–guess such decisions. In any event, the record reveals that Jackman's counsel exercised consistently competent judgment.

admissible, however, to establish the effect of this misstatement on the jury's deliberations. "It is for the court to say whether the remarks made by the juror . . . probably had a prejudicial effect upon the minds of the other jurors." *State v. Parker, supra* at 415.

The juror's affidavit is unnecessary to establish the fact of the misstatement, however, as the prosecutor has conceded that she misstated the evidence. The question then becomes whether the trial court's reliance on the misstatement as a basis for ordering a new trial constituted an abuse of discretion.

■ We hold that it did. Whatever damage to Jackman's defense the prosecutor's misstatement might have caused was neutralized by the misstatement Jackman's counsel made on the same piece of evidence. We can only presume that the jury, as instructed, referred to the testimony taken and not the arguments of counsel to determine the facts of the case. *See State v. Grisby,* 97 Wn.2d 493, 499, 647 P.2d 6 (1982).

The decision of the Court of Appeals is affirmed.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, and ANDERSEN, JJ., concur.

UTTER, J. (concurring in part, dissenting in part)—I agree with the majority opinion's conclusion that jury misconduct could not be used by the trial court as grounds for a new trial.

I cannot agree, however, with its conclusion that the trial court erroneously granted a new trial based upon "[n]ewly discovered evidence . . . which [the defendant] could not have discovered with reasonable diligence and produced at the trial". CrR 7.6(a)(3).

The trial court additionally, correctly in my view, cited as a third ground accumulated errors which referred to "the misstatement in closing argument of a significant item of testimony." Conclusion of law 3(A). The standard of review regarding a trial court's determination of grounds justifying

a new trial, as the majority agrees, is substantial evidence to support its factual findings and abuse of discretion as to conclusions drawn from those facts. *State v. Williams,* 96 Wn.2d 215, 220–21, 634 P.2d 868 (1981).

Where a new trial has been granted we are guided by our previous cases which hold that,

> [t]he trial judge, by his very presence, is in a favored position. It has been reiterated in appeals from orders granting new trials in both civil and criminal cases that a much stronger showing is required to overturn an order granting the new trial than denying a new trial. The question is: Did the respondents have a fair trial? The trial judge thought that they did not. The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion. In that respect, he has a very wide discretion.

*State v. Marks,* 71 Wn.2d 295, 302, 427 P.2d 1008 (1967), quoting *State v. Taylor,* 60 Wn.2d 32, 42, 371 P.2d 617 (1962). The majority presents reasons why it would have decided differently, and labels the trial court's action abuse of discretion, but does not accord the trial court the very wide latitude we have previously given when a new trial is granted.

The trial court's findings indicate that Jackman had subpoenaed the witness, LuAnne Tracy, but then was unable to locate her. On Jackman's motion, the court issued a material witness warrant for Tracy's arrest. The court noted this was done after the court had been apprised of "defense efforts to keep in contact with and to produce the witness for trial." Finding of fact 2(B). Substantial evidence exists to support these findings. The affidavit on file by the attorney for Jackman states Tracy was personally served with a subpoena on May 12, 1986 to appear at trial on June 3. Subsequently, on June 9, a letter and additional subpoena were sent to Tracy informing her that the trial had been continued until June 16. In addition, a defense investigator talked with Tracy "a number of times" and "expended a lot of energy looking for" Tracy when she could not be located a few days before the trial.

The majority premises its affirmance of the Court of Appeals and reversal of the trial court on this issue upon its conclusion that "due diligence was not exercised here . . . not only on the failure of proper service of the second subpoena, but also on Jackman's failure to seek a continuance in order to obtain Tracy's appearance." Majority, at 781. The majority notes Jackman's counsel never requested more time to continue their efforts to serve a subpoena on Tracy and concludes that "having made no request of the court for a continuance, or for even some delay, to afford an opportunity to find his witness[], [Jackman] cannot contend that the court erred in denying him any relief, as he asked for none." *State v. Douglas,* 193 Wash. 425, 430, 75 P.2d 1005 (1938).

My difficulty with this conclusion is that it fails to give proper deference to the trial judge who heard the testimony, who witnessed efforts of defense counsel to obtain the presence of Tracy as a witness, and who had the opportunity to observe whether or not in that setting a failure to ask for a continuance should have been fatal to a later request for a new trial. While we may disagree with the conclusions of the trial court, the trial court's conclusions of law were properly drawn from findings of fact supported by the record. Unless we are willing to say as a matter of law that a failure to request a continuance bars a later request for a new trial on newly discovered evidence when the witness is unavailable, the trial court's conclusions of law should be upheld. The majority's footnote 3 presents a strong reason why this should not be an inflexible rule of law. It notes:

> This is not to say, of course, that the failure to seek a continuance was unsound trial practice. Tactical decisions made by trial counsel are frequently based on facts not found in an appellate record and reflect the opinion, experience, and judgment of the individual attorney. We cannot, and should not, second-guess such decisions. In any event, the record reveals that Jackman's counsel exercised consistently competent judgment.

In addition, it cannot be said from a review of the record that the testimony of Tracy would have been merely cumulative. The State, as was noted by the court, put on five witnesses who testified as to their view of the robber. The fact that there were five witnesses was emphasized in the prosecutor's arguments to the jury. The jury heard five eyewitnesses testify that Jackman was the robber, and heard only one say otherwise. The addition of one more witness to substantiate the defense theory could have had a substantial impact in the quantitative evidentiary advantage held by the State.

The State contends that Tracy's testimony would be cumulative in the same manner as the testimony deemed cumulative in *State v. Williams, supra.* There the defendant was convicted of robbing, kidnapping, and murdering a convenience store cashier. A hidden store camera had produced pictures of the perpetrator, a black man wearing a fatigue jacket and cap. Asserting a defense of mistaken identity, the defendant offered testimony of a witness who saw someone fitting this description near the scene of the crimes on the evening of their occurrence and again at the VA hospital several days later. That witness testified this person was not the defendant. The newly discovered evidence alleged in *Williams* was testimony of a security guard who corroborated the sighting at the VA hospital. The court held that this evidence was not the sort that would justify a new trial, noting that another trial witness, a VA pharmacist, already had corroborated the VA sighting. The court concluded, "[the security guard's] testimony would merely have duplicated the pharmacist's testimony and would have added nothing because the latter's testimony was undisputed by the prosecutor." *Williams,* at 224. Thus, the new evidence was deemed "merely cumulative". *Williams,* at 223.

The *Williams* case is not controlling on this issue. There the newly discovered evidence concerned an issue of fact "undisputed by the prosecutor". Here, in contrast, the State vigorously disputes the substance of what Tracy

would testify—that the man who fled in an orange car at the time the grocery was robbed was not Wilfred Jackman. A second distinction between *Williams* and the present case, related to the first, is that the new testimony offered in *Williams* would not have been directly exculpatory, as Tracy's testimony would have been in this case.

The trial court concluded that Tracy's testimony "appears to have a high probability of changing the result of the trial in this case." Conclusion of law 2(A). In earlier cases where new trial has been denied, the evidence has been clear and the proffered new evidence was of patently questionable veracity. *See State v. Peele,* 67 Wn.2d 724, 409 P.2d 663 (1966). The evidence is not that clear in this case. Several of the State's witnesses only hesitantly identified Jackman as the robber; LuAnne Tracy, by contrast, was "positive" that Jackman was not the person seen fleeing from the area of the grocery. The trial court's finding that Tracy's testimony would probably change the result is not an abuse of discretion by any standard this court has enunciated. The finding that Tracy's testimony "appears to have a high probability of changing the result of the trial in this case" is of sufficient certainty that its granting of a new trial should be upheld.

Petitioner's final ground supporting the order granting the new trial was the prosecutor's misstatement in her closing argument. The prosecutor concedes that in closing argument she misspoke in her assertion that a witness had seen the robber flee in the company of a black man and a white man. The witness said only that there was a "male in the back rear and there was a white male in the front seat" of the car in which the robber fled. Verbatim Transcript of Proceedings, at 169. At the time the statement was made, defense counsel did not object to the prosecutor's statement. Defense counsel also inaccurately stated in her closing argument that the witness had said both the men in the car were white. The trial court found the prosecutor's misstatement constituted error that, when combined with the other errors found, denied Jackman substantial justice. The

court based its ruling in part on a juror's affidavit stating that the prosecutor's misrepresentation of the evidence was accepted by the jurors during deliberations. As the majority correctly notes, we may not consider a juror's affidavit indicating that the prosecutor's misrepresentation of the evidence was accepted by the jurors during deliberations. The issue is not, therefore, the fact that there was a misstatement—the prosecutor concedes this—but whether the trial court's reliance on the misstatement as a basis for ordering a new trial constituted an abuse of discretion. Unfortunately, it is not clear whether the trial court could have reached the same conclusion as to the prejudicial effects of the prosecutor's misstatement if she had not considered the juror's affidavit attesting to the effect of the misstatement on the deliberations. For this reason, at a minimum, if it is not agreed that the other grounds stated by the trial court are sufficient to support granting a new trial, the case should be remanded to the trial court so it may determine the prejudice caused by the misstatement without reference to the juror's affidavit.

The majority only disagrees with the conclusions reached by the trial court. It does not as to the second and third grounds stated by the trial court, indicate there is not substantial evidence in the record to support the findings of fact. The trial court's findings offer support for the trial court's conclusions of law. I would, therefore, affirm the order granting a new trial as to the second and third grounds stated by the trial court. If a majority do not agree, I would, at a minimum, remand the case to the trial court so that it may determine the prejudice caused by the misstatement in concluding argument by the prosecutor without reference to the juror's affidavit.

DORE and SMITH, JJ., and PEARSON, J. Pro Tem., concur with UTTER, J.