FILED
COURT OF APPEALS
DIVISION II

2013 MAY 21 AM 10: 09

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42728-1-II |
| Respondent, | |
| v. | |
| NICHOLAS PETER BLAZINA, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Nicholas Blazina appeals his second degree assault conviction, challenging the trial court's denial of his request for disclosure of juror information and challenging the trial court's finding of his ability to pay his legal financial obligations (LFOs). We affirm.

## FACTS

Keith Ainsworth was assaulted in the QZ Restaurant in Graham, Washington. The single punch to his face fractured his jaw in two places, knocked out four teeth, severed his tongue, and rendered him immediately unconscious. He spent four days in the hospital, underwent six or seven reconstructive surgeries, and was unable to return to full-time work for three months.

Carrie Duncan had observed Blazina punch a man in the side of the head and run out of the restaurant. Based on Duncan's statement to the police, her identification of Blazina from a photomontage and two other witnesses' identifications of Blazina, the State charged Blazina with

second degree assault.[1] Several of Blazina's friends testified on his behalf, giving testimony contrary to Duncan's and the other State's witnesses.

After lengthy deliberations, the jury returned a guilty verdict. As defense counsel was leaving the courthouse, he spoke with two jurors who told him they thought Blazina's witnesses had lied in order to protect Blazina and, therefore, he must have been guilty. Blazina then filed a motion to disclose juror information in which he stated:

> THE GROUND upon which the defendant bases this motion is: Two of the jurors told to the defense counsel after the trial that the jury reached its verdict not on the State's evidence, but on the assumption that the defendant's witnesses were lying to help the defendant and therefore the defendant must be guilty. The defense attorneys need jurors['] information for the investigation of possible jury misconduct.

Clerk's Papers (CP) at 23. The trial court denied the motion, ruling:

> The Court hereby denies the defendant's motion for release of juror personal information. The Court finds that the comments made by the jurors inhere in the verdict and shows the mental process of the jury in reaching its verdict. The court finds that the comments made by the jurors [do] not amount to good cause.

CP at 24. The trial court then imposed a standard range sentence, $3,387.87 in legal financial obligations and, at a later hearing, $47,145.69 in restitution. The judgment and sentence included the following:

> 2.5 ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS. The court has considered the total amount owing, the defend[ant]'s past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW [9.94A.753].

---

[1] RCW 9A.36.021(1)(a).

No. 42728-1-II

CP 29. Blazina appeals, claiming that the trial court erred in denying his request for juror information and in entering a finding on his ability to pay his LFOs.

## ANALYSIS

### I. JURY DISCLOSURE

GR 31(j) creates a presumption that juror information, other than name, is private. After trial is over, however, one may petition the trial court to allow access to juror information upon a showing of good cause.[2] Upon such a showing, the trial court *may* permit access to the information. Because this decision is discretionary, we review a trial court's decision under this rule for an abuse of discretion; i.e., we review whether the decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). In evaluating the good cause requirement, the trial court cannot consider facts inherent in the verdict. *State v. Jackman*, 113 Wn.2d 772, 777, 783 P.2d 580 (1989). The *Jackman* Court explained:

> "The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's process in arriving at its verdict, and, therefore, inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict."

___

[2] GR 31(j) provides:
> **Access to Juror Information.** Individual juror information, other than name, is presumed to be private. After the conclusion of a jury trial, the attorney for a party, or party pro se, or member of the public, may petition the trial court for access to individual juror information under the control of court. Upon a showing of good cause, the court may permit the petitioner to have access to relevant information. The court may require that juror information not be disclosed to other persons.

No. 42728-1-II

*Jackman*, 113 Wn.2d at 777-78 (quoting *Cox v. Charles Wright Academy, Inc.*, 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967)).

Blazina argues that the jurors' statements indicated that they ignored the presumption of innocence and eased the State's burden of proof. In every criminal case, "a defendant is presumed to be innocent throughout the trial and . . . the burden resides with the State to overcome that presumption by evidence that is convincing beyond a reasonable doubt." *State v. Warren*, 165 Wn.2d 17, 36, 195 P.3d 940 (2008) (Alexander, C.J., concurrence, in part, with dissent). Analogizing to prosecutorial misconduct that erodes the presumption of innocence as discussed in *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011), Blazina argues that jury misconduct that ignores the presumption of innocence entitles him to a new trial.

We disagree. First, the trial court properly instructed the jury that in order to find Blazina guilty, the State must prove the elements of the offense beyond a reasonable doubt. We presume the jury followed this instruction. *State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011). Additionally, the jury's assessment of witness credibility is solely its province and, here, the statements Blazina relies on are matters of credibility assessment and thus inhere in the verdict. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Because sound reasons support the trial court's decision, we find no abuse of discretion. *Jackman*, 113 Wn.2d at 777-78.

4

No. 42728-1-II

## II. LEGAL FINANCIAL OBLIGATIONS

Blazina next argues that the trial court erred in finding that he had the present or future ability to pay his LFOs.[3] He argues that the record does not support boilerplate finding 2.5 because there was no discussion on the record and no documentary evidence presented to support it. He relies on *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012). Before making such a finding, the trial court must "'[take] into account the financial resources of the defendant and the nature of the burden'" imposed by the legal financial obligations. *Bertrand*, 165 Wn. App at 404 (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)).

The discretionary legal financial obligations that Blazina challenges are the $400 fee for court appointed counsel and the $2,087.87 extradition costs. Blazina did not object at his sentencing hearing to the finding of his current or likely future ability to pay these obligations. While we addressed the finding of current or future ability to pay in *Bertrand* for the first time on appeal under RAP 2.5(a), that rule does not compel us to do so in every case. We noted that Bertrand had disabilities that might reduce her likely future ability to pay and that she was required to begin paying her financial obligations within 60 days of sentencing. *Bertrand*, 165 Wn. App. at 404. Nothing suggests that Blazina's case is similar. Because he did not object in the trial court to finding 2.5, we decline to allow him to raise it for the first time on appeal.

---

[3] Blazina does not challenge the mandatory fees. These are the $500 victim penalty assessment, the $100 DNA (deoxyribonucleic acid) collection fee, and the $200 criminal filing fee. RCW 7.68.035(1)(a); RCW 43.43.7541; RCW 36.18.020(2)(h).

No. 42728-1-II

Unlike the discretionary costs imposed under RCW 10.01.160(3), RCW 9.94A.753(1) instructs the trial court to set the restitution amount and then consider the offender's ability to pay when setting the monthly payment obligation:

> The court shall *then* set a minimum monthly payment that the offender is required to make towards the restitution that is ordered. The court should take into consideration the total amount of the restitution owed, offender's present, past, and future ability to pay, as well as any assets that the offender may have.

(Emphasis added.) Here, the trial court did not set a monthly minimum payment but merely set the amount of restitution that Blazina owed. Blazina's claim does not apply to the restitution award and, as such, we give it no further consideration.

We affirm the trial court's order denying Blazina's juror information disclosure request and refuse to consider his challenges to finding 2.5 in the judgment and sentence.

_____
Worswick, C.J.

We concur:

_____
Penoyar, J.

_____
Bjorgen, J.

6