FILED
COURT OF APPEALS
DIVISION II

2015 JUN -4 AM 8:36

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>    v.<br><br>ALLEN D. PROSHOLD,<br><br>                    Appellant. | No. 45736-9-II<br><br><br><br><br>UNPUBLISHED OPINION |

MAXA, J. — Allen Proshold appeals his convictions of first degree kidnapping (domestic violence) and second degree assault (domestic violence) and the imposition of legal financial obligations (LFOs) as part of his sentence. We hold that (1) the trial court did not violate his right to counsel in handling his request for new trial counsel, (2) the trial court's instruction on the definition of "abduct" was not ambiguous, (3) the trial court did not err in allowing the jury to deliberate knowing that one of the jurors had to leave at a certain time to catch a train, (4) defense counsel did not provide ineffective assistance of counsel by failing to ask that an alternative juror substitute for a juror that had to leave, (5) Proshold cannot challenge the trial court's imposition of LFOs because he did not object below, and (6) Proshold's assertions in his statement of additional grounds (SAG) have no merit. Accordingly, we affirm Proshold's convictions and sentence.

## FACTS

Proshold and Kristy Pruett lived in Proshold's van. On August 1, 2012, Proshold waited in his van while Pruett went to her drug dealer's home to buy heroin. According to Pruett, when she returned to the van Proshold looked like a wild man, as he had just injected a very large amount of methamphetamine. Pruett was unable to purchase any heroin and, according to Pruett, Proshold demanded that she give him the money she had planned to use. According to Pruett, after she said no, Proshold choked her, ripped off her underwear, yanked down her bra, and searched her for the money, including inside her vagina. During these events, Proshold was driving erratically and Pruett was screaming out of the window for someone to call 911.

When the van passed through a neighborhood, two men heard Pruett's screams, got in a truck, and followed the van. When they found the van parked at a nearby house, they saw Proshold get out and walk into the house's backyard. Both men testified that Pruett was beaten up, crying, and hysterical, was holding her panties, and stating that she had been raped. She gave similar accounts to the police.

The State charged Proshold with second degree rape, attempted first degree robbery, second degree assault, and first degree kidnapping. During a readiness hearing on October 24, 2013, Proshold asked for a new attorney:

> Your Honor, my attorney is an incompetent goob. He's derelict in his duties. I'm looking at a life sentence. I'm going to trial next week. There are three potential witnesses I asked him to talk to and he hasn't; there's a matter I asked him to look into the first time we met and he hasn't. I asked him point-blank yesterday what he's done for my case, and his one and only answer was -- was listened to some audio recordings. Inadequate representation. I would like another attorney, please.

Report of Proceedings (RP) at 1-2. Proshold's attorney then explained to the judge that he would like a continuance to further prepare and that he was only recently able to interview Pruett. After granting a continuance, the trial court asked defense counsel if he believed that he still could adequately prepare and work with Proshold. Defense counsel said that he could. The trial court then denied the motion for new counsel, ruling:

> Mr. Proshold, I'm not going to grant that motion today. That's not -- you can bring that again. I'm going to have you and [defense counsel] talk after he's had a chance to go over what he's been able to do at this point and what his plans are. If you want to come back, we'll chat about it again.

RP at 7. Proshold did not again raise the issue or request new counsel.

Before trial began, the bailiff informed the trial court and counsel that juror 5 had a train ticket for 3:00 PM the following Monday. The jury began deliberations on Friday, but was unable to reach a verdict that day. At 8:50 PM, the trial court released the jury until the following Monday. On Monday morning, the jury indicated that it was at an impasse and the trial court polled the jury foreman to see if there was a possibility of reaching verdicts.[1] The foreman said that there was a reasonable probability that they could reach a verdict on three of the four counts. The trial court then told them to continue deliberations. The trial court suggested that it would recess deliberations if necessary. At 2:19 PM, the jury reached verdicts on all four counts.

The jury acquitted Proshold of the rape and attempted robbery charges, but it found him guilty of assault and kidnapping and made a special finding that the matter involved domestic violence. In sentencing Proshold, the trial court used a preprinted judgment and sentence

---

[1] Juror 5 brought her luggage with her to court, which was about 15 minutes from the train station.

document that included a boilerplate section indicating that the court was making a finding that Proshold had the ability or future ability to pay LFOs. Proshold appeals his convictions and sentence.

## ANALYSIS

### A. REQUEST FOR NEW COUNSEL

Proshold argues that the trial court conducted an inadequate inquiry into his request for new counsel. He claims that the trial court failed to ask specific and targeted questions in order to make a meaningful evaluation of the problem and an informed decision. We disagree.

We review a trial court's refusal to appoint new counsel for an abuse of discretion. *State v. Lindsey*, 177 Wn. App. 233, 248, 311 P.3d 61 (2013), *review denied*, 180 Wn.2d 1022 (2014). A trial court abuses its discretion where its decision is manifestly unreasonable or based on untenable grounds. *Id.* at 248-49. A decision is based on untenable grounds if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. *Id.* at 249. When reviewing a trial court's refusal to appoint new counsel, we consider (1) the extent of the conflict, (2) the adequacy of the trial court's inquiry, and (3) the timeliness of the motion. *Id.*

None of these factors shows an abuse of discretion here. Proshold's complaint at the October 24 readiness hearing was that his attorney had failed to interview witnesses or adequately prepare for trial. Defense counsel acknowledged that he needed more time for trial preparation and he asked for a continuance to better prepare. The trial court granted the continuance and asked Proshold to again raise the issue if he and defense counsel could not resolve their differences. Under these circumstances, the trial court appeared to understand the extent of the conflict and allowed the continuance to resolve the conflict.

Further, after this initial discussion and after the trial court granted a continuance, Proshold did not again raise the issue or request new counsel. This fact suggests that any conflict was resolved before trial.

We hold that the trial court did not abuse its discretion in the handling of Proshold's request for new counsel.

B.      KIDNAPPING INSTRUCTION

Proshold argues that the trial court's kidnapping instruction defining the term "abduct" was ambiguous and allowed the jury to convict him without proof of all the essential elements of the crime. We disagree.[2]

We review a jury instruction challenge de novo and evaluate the challenge in the context of the instructions as a whole. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). "Instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." *State v. Hutchinson*, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998). When reviewing a jury instruction claim, we give deference to a trial court's wording of its instructions. *State v. O'Hara*, 167 Wn.2d 91, 108 n.4, 217 P.3d 756 (2009).

As charged here, "[a] person is guilty of kidnapping in the first degree if he or she intentionally abducts another person with intent: . . . (c) To inflict bodily injury on him or her."

---

[2] Proshold acknowledges that he did not object below, but claims that this was a manifest constitutional error that we can review for the first time on appeal under RAP 2.5(a)(3). Although we disagree that the jury instruction was erroneous, we exercise our discretion under RAP 2.5(a) to address an issue raised for the first time on appeal and consider the issue on the merits.

RCW 9A.40.020(1). " 'Abduct' means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." Former RCW 9A.40.010(1) (2011).[3]

The trial court instructed the jury that "[a]bduct means to restrain a person by either secreting or holding the person in a place where that person is not likely to be found or using or threatening to use deadly force." Clerk's Papers at 29. The only difference between the instruction and the statutory definition is the omission of the "(a)" and "(b)" notations.

Proshold argues that this instruction created an ambiguity because the jury could have interpreted the language as defining two means to accomplish kidnapping: (1) restraining a person by either secreting or holding the person in a place where that person is not likely to be found, or (2) using or threatening to use deadly force. Interpreted this way, the second means would not contain the statutory element of restraint and would allow the jury to convict him of kidnapping without proof of restraint. He argues that this ambiguity was particularly harmful because he testified that he did not restrain Pruett and jurors could have believed that he did not restrain her but that he did threaten or assault her.

Although the better practice would have been to include the "(a)" and "(b)" notations that were used in the statute, we disagree that removing them from the trial court's instruction created any ambiguity. The structure of the sentence and the verb tenses used make it clear that the term "abduct" means "to restrain a person" in one of two ways: by "secreting or holding" that person or "using or threatening to use deadly force." A juror would understand that the State had to

---

[3] RCW 9A.40.010 was amended in 2014, but this amendment did not affect the subsection cited. LAWS OF 2014, ch. 52, § 2.

show restraint in addition to either "secreting or holding" or "using or threatening to use deadly force." Therefore, we hold that the trial court did not error in instructing the jury on the definition of "abduct."

C.    JURY DELIBERATIONS

Proshold argues that he was denied his right to a fair trial because the jurors were pressured to return a verdict because juror 5 had to leave to catch a train on the afternoon of the last day of deliberations.[4] We disagree.

The Sixth Amendment to the United States Constitution and article I, sections 3 and 22 of the Washington Constitution guarantee a defendant the right to a fair jury trial. This right includes "the right to have each juror reach his verdict uninfluenced by factors outside the evidence, the court's proper instructions, and the arguments of counsel." *State v. Boogaard*, 90 Wn.2d 733, 736, 585 P.2d 789 (1978).

A claim that the trial court coerced a jury verdict can be raised for the first time on appeal. *State v. Ford*, 171 Wn.2d 185, 188, 250 P.3d 97 (2011). To prevail, the appellant must establish a reasonably substantial possibility that the trial court's intervention improperly influenced the verdict. *Id.* at 188-89. We examine the totality of the circumstances in assessing whether the appellant has made an affirmative showing of improper influence. *Id.* at 189.

A trial court can violate a defendant's jury trial right by imposing time pressures on a jury to return a verdict. *See State v. Crowell*, 92 Wn.2d 143, 148, 594 P.2d 905 (1979) (bailiff erred

_____

[4] Proshold also notes this same argument in his SAG. Because appellate counsel addressed this issue in his supplemental brief, we do not separately address Proshold's SAG claim on this ground.

7

in telling jury it needed to return a verdict by a certain time); *Boogaard*, 90 Wn.2d at 739-40 (trial court impermissibly suggested that jury needed to return a verdict within a half hour.

However, the same rule does not apply when jurors have their own time constraints. In *State v. Jackman*, the defendant alleged that he was denied a fair trial because the jury may have hastened its deliberations because the foreman was overdue for a vacation. 113 Wn.2d 772, 777, 783 P.2d 580 (1989). Our Supreme Court disagreed and distinguished both *Boogaard* and *Crowell*. The court stated that "[i]mportant distinctions exist . . . between a case where a court official urges jurors to haste and a case where the jurors have their own motives for haste. In the former situation, jurors suffer an outside influence on their decisionmaking; in the latter, only their own 'motives[,] . . . intentions and beliefs' guide them." *Jackman*, 113 Wn.2d at 779 (quoting *Cox v. Charles Wright Acad., Inc.*, 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967)).

This case involves a juror's own time constraints, not judicial imposition of time pressures. Neither the trial court nor the bailiff encouraged the jury to hasten its deliberations. Instead, the trial court took the proper course and allowed the jury to continue deliberating. In fact, the trial court suggested that it would recess deliberations if necessary. Proshold fails in his burden of showing a reasonably substantial possibility of judicial influence on the jury's verdict. *Ford*, 171 Wn.2d at 188-89.

We hold that the trial court did not violate Proshold's right to a fair jury trial by allowing juror 5 to deliberate despite the fact that she had to leave at a certain time to catch a train.

D.    INEFFECTIVE ASSISTANCE OF COUNSEL

Proshold argues that defense counsel's failure to request that juror 5 be excused and a substitute juror brought into deliberations denied him his right to effective assistance of counsel. We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Because we held above that juror 5's conduct did not taint the fairness of the trial, trial counsel had no obligation to object to the deliberations continuing with juror 5 empaneled. Therefore, we hold that Proshold cannot establish that defense counsel's performance was deficient or that Proshold suffered any prejudice, and that his claim fails.

E.    LEGAL FINANCIAL OBLIGATIONS

Proshold's judgment and sentence contains a finding that he had the ability to pay the LFOs imposed. Proshold did not challenge this finding during sentencing, and we generally do not consider issues raised for the first time on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded*, ___ Wn.2d ___, 344 P.3d 680 (2015).

Our decision in *Blazina*, nearly seven months before Proshold's sentencing, provided notice that the failure to object to LFOs during sentencing waives a related claim of error on appeal. *Id.* As our Supreme Court noted in reviewing our decision in *Blazina*, an appellate court may use its discretion to reach unpreserved claims of error. *Blazina*, 344 P.3d at 681. We decline to exercise such discretion here.

F.    SAG ASSERTIONS

    1.    Victim's Pants as Physical Evidence

Proshold argues that the State violated his due process rights by not introducing into evidence Pruett's undamaged pants at trial. Although Pruett testified that she was wearing a dress, Proshold testified that she was wearing pants just prior to the time of the assault. He argues that because the pants fit her tightly, it would have been impossible to forcibly remove them without ripping them, suggesting that she took them off voluntarily. We reject Proshold's argument.

Under both the United States and Washington constitutions, due process in criminal prosecutions requires fundamental fairness and a meaningful opportunity to present a complete defense. *State v. Wittenbarger*, 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994). To satisfy due process, the prosecution has a duty to disclose material exculpatory evidence and a related duty to preserve it. *Id.* at 475. The State's failure to preserve evidence that is material and exculpatory violates a defendant's right to due process and requires that the charges against the defendant be dismissed. *Id.*

Proshold's claim fails for two reasons. First, there is no showing that the State withheld this evidence from the defense. The pants were taken into evidence and thus available to both the State and the defendant. Second, evidence about how the pants fit the victim is not in the record and therefore not properly before us on appeal. We do not address claims based on facts outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

### 2.  Victim's Mental Health History

Proshold argues that the trial court erred in preventing him from examining Pruett about her mental health history because doing so seriously undermined his defense. He argues that the evidence would have shown her pattern of behavior and willingness to go to the hospital, undermining her testimony at trial that she did not want to go to the hospital. We disagree that the trial court erred.

Proshold did not present a proper foundation for admission of Pruett's mental health history into evidence. Proshold offered no evidence of Pruett's mental health history, no evidence that she had been involuntarily committed, and no evidence that this past behavior, even if true, related to her behavior that day. Therefore, we hold that the trial court did not abuse its discretion in excluding this evidence.

### 3.  Credit For Time Served

Proshold argues that his judgment and sentence was amended on March 2, 2014, to remove an additional 39 days of credit for time served when that time already had been subtracted at his original sentencing. However, this is a matter outside the appeal record. As noted above, we do not address claims based on facts outside the record on direct appeal. *McFarland*, 127 Wn.2d at 337-38. Therefore, we do not consider this claim.

45736-9-II

We affirm Proshold's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.

12