IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30769-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JORGE L. QUINTANILLA, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. – Jorge L. Quintanilla appeals his conviction and sentence for use of extortionate means to collect extensions of credit. He contends (1) sufficient evidence does not exist to support his conviction, (2) he was denied effective assistance of counsel, and (3) the sentencing court erred in failing to total his legal financial obligations (LFOs). We find no error, and affirm.

## FACTS

On the surface, Mr. Quintanilla operated a seafood distribution business. According to Mr. Quintanilla, a man he briefly knew as Miguel Gonzalez (initially known to Mr. Quintanilla by other names) invested $5,000 in Mr. Quintanilla's business. Later, Enrique Salas persuaded Mr. Quintanilla to give him money ($5,000 to $17,000, the amount was disputed), ostensibly in support of Mr. Salas's import business. Some

amounts received by Mr. Salas from Mr. Quintanilla were shown in bank records produced at trial. Whether or not Mr. Quintanilla considered the investment money a loan or an investment later became a fact question in a jury trial where the State produced evidence to show its theory that the transactions were made below the surface in the context of illicit narcotics distribution. In any event, according to Mr. Salas, "He [Mr. Quintanilla] invested money on the company and, yes, I borrowed $1000 from him." Report of Proceedings (RP) at 109. The loan was not disputed and was apparently "for the bail." Clerk's Papers (CP) at 54.

Mr. Gonzalez later approached Mr. Quintanilla and told him he wanted his $5,000 back. Mr. Quintanilla informed Mr. Gonzalez that he did not have it because he had in turn invested it with Mr. Salas. Then, Mr. Quintanilla, Mr. Gonzalez, and an unknown third man went to Mr. Salas's office where Mr. Quintanilla asked Mr. Salas, "Where is the money?" CP at 60. Mr. Salas explained that he had some other debts to pay off first. Mr. Salas asked Mr. Gonzalez and the other man to leave, triggering a fight between Mr. Salas and the two men in which Mr. Salas sustained multiple facial injuries and facial fractures requiring hospitalization.

The State charged Mr. Quintanilla with one count of first degree assault and one count of use of extortionate means to collect extensions of credit. At trial, the jury heard evidence showing Mr. Quintanilla had given Mr. Salas money to further Mr. Salas's business, but the amounts and purposes were disputed. Mr. Quintanilla considered his investment as money owed by Mr. Salas. Mr. Quintanilla identified $5,000 as having come from Mr. Gonzalez and $12,000 as having come personally from him. Mr. Salas reported having received not more than $6,000 from Mr. Quintanilla. Mr. Salas testified

without dispute that Mr. Quintanilla had additionally loaned him $1,000 for personal reasons. The State elicited testimony in support of its drug distribution theory and theorized that the two men who beat Mr. Salas were Mr. Quintanilla's musclemen. Mr. Quintanilla testified that Mr. Gonzalez had indeed suggested his involvement in a drug distribution scheme between Los Angeles and the Tri-Cities, but he related that was unrelated to the assault and he had, nevertheless rejected the scheme, choosing instead to report that to law enforcement after the assault.

In closing arguments, the State asserted the money Mr. Quintanilla gave to Mr. Salas for investment was in actuality a loan, rather than an investment given to enlist support in the drug distribution scheme. Defense counsel did not distinguish between the sums purportedly invested or loaned to Mr. Salas, and referred to all the money as being loaned during his response argument.

The jury found Mr. Quintanilla not guilty of the assault and guilty of use of extortionate means to collect extensions of credit.

Posttrial, defense counsel moved to arrest judgment or, in the alternative, moved for a new trial. Among other posttrial arguments, defense counsel argued he was ineffective at trial regarding the extortionate means charge because he failed to elicit evidence showing the money Mr. Quintanilla gave to Mr. Salas was an investment. In support, defense counsel submitted an affidavit partly stating that prior to trial, he received information showing the money Mr. Quintanilla gave to Mr. Salas was an investment, not a loan. Defense counsel stated, "During trial I did not submit any documents from the State indicating my client was a part owner of Mr. Solis's [sic] business. I also did not elicit testimony from the victim related to the characterization of

3

the funds as an investment. I had knowledge that both the documents existed and of the victim's previous statements indicating that it was an investment." CP at 85. The trial court denied defense counsel's posttrial motion.

At sentencing, the trial court imposed LFOs. The trial court did not total the separately listed LFOs owed by Mr. Quintanilla in the judgment and sentence. Mr. Quintanilla did not object. Mr. Quintanilla appealed his conviction and sentence.

## ANALYSIS

### A. Evidence Sufficiency

The issue is whether sufficient evidence supports Mr. Quintanilla's extortionate means to collect extensions of credit conviction.

Evidence is sufficient if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt; evidence is viewed in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming evidence insufficiency admits the truth of the State's evidence and all reasonable inferences that may be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Under RCW 9A.82.040, a person is guilty of use of extortionate means to collect extensions of credit if "[a] person who knowingly participates in any way in the use of any extortionate means to collect or attempt to collect any extensions of credit or to

4

punish any person for the nonrepayment thereof." "'To extend credit' means to make or renew a loan or to enter into an agreement, tacit or express, whereby the repayment or satisfaction of a debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or shall be deferred." RCW 9A.82.010(18).

While it is disputed Mr. Quintanilla invested several thousand dollars in Mr. Salas's business, undisputed evidence shows Mr. Quintanilla additionally made a $1,000 personal loan to Mr. Salas. This loan was clearly an extension of credit under unchallenged instruction 19, which provided, "'To extend credit' means to make or renew a loan or enter into an agreement, tacit or express, whereby the repayment or satisfaction of a debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or shall be deferred." CP at 111.

As Mr. Quintanilla argues in his brief, a "loan" is defined at common law as "an advancement of money or other personal property to a person, under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced." *Baxter v. Stevens*, 54 Wn. App. 456, 459, 773 P.2d 890 (1989). The $1,000 that Mr. Salas borrowed from Mr. Quintanilla was unquestionably a loan.

Mr. Quintanilla asked Mr. Salas, "[W]here is the money?" and did not ask for any specific amount of money. RP at 113. Mr. Quintanilla believed he was entitled to repayment as though he was owed the money. This is circumstantial evidence of an extension of credit. Mr. Salas consistently testified he owed Mr. Quintanilla money, the exact amount did not have to be proved. The State aptly argues no evidence shows Mr.

5

Quintanilla was due to receive a stock dividend or a share of profits that would necessitate a demand of money on the investment. Isolated statements in the testimony may provide sufficient evidence to sustain a criminal conviction. *See State v. Trout*, 125 Wn. App. 403, 425, 105 P.3d 69 (2005) (affirming criminal conviction despite dissent's complaint that State's theory of the case was supported by isolated statements in the testimony).

In sum, the State argued its theory that the investments were really loans made in the context of illicit narcotics. The jury was left to decide matters of credibility and the persuasiveness of the evidence and returned a verdict supported by the record. Apparently, the jury found the State's theory persuasive beyond a reasonable doubt. Viewing the evidence in a light most favorable to the State and drawing all reasonable inferences in the State's favor, we conclude the verdict and the court's conviction are supported by sufficient evidence.

## B. Assistance of Counsel

Mr. Quintanilla contends he was denied effective assistance of counsel because his attorney failed to argue the money given to Mr. Salas was not a loan.

To demonstrate ineffective assistance of counsel, a defendant must show that his lawyer's representation was deficient and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice occurs when but for counsel's deficient performance, the result of the proceeding would have been different.

6

*Id.* at 335. If a party fails to satisfy either prong, we need not consider both prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

We are highly deferential to counsel's performance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Tactical decisions cannot form the basis for a claim of deficient performance. *McFarland*, 127 Wn.2d at 336. Tactical decisions include selecting witnesses, conducting cross-examination, selecting jurors, making trial motions, and introducing evidence, among others. *State v. Grier*, 171 Wn.2d 17, 31, 246 P.3d 1260 (2011).

Here, defense counsel presented evidence showing Mr. Quintanilla had invested in Mr. Salas's business. Defense counsel emphasized that point in both his cross-examination of Mr. Salas and direct examination of Mr. Quintanilla. In his affidavit supporting Mr. Quintanilla's posttrial motions, defense counsel referred to two checks that Mr. Quintanilla had given to Mr. Salas as investments in his company. The State admitted the checks during its case in chief. More documents showing Mr. Quintanilla had an ownership interest in the business would have been merely cumulative. Given all, failing to argue the point further did not amount to representation that fell below an objective standard of reasonableness. Thus, defense counsel's performance was not deficient.

Even assuming Mr. Quintanilla established deficient performance, he cannot show prejudice. The State did not dispute that Mr. Quintanilla had invested several thousand dollars into Mr. Salas's business. Instead, the State stressed the $1,000

7

personal loan satisfied the charge's extensions-of-credit element. Accordingly, we conclude Mr. Quintanilla was not denied effective assistance of counsel.

### C. Legal Financial Obligations

The issue is whether the trial court's failure to total the LFOs on the judgment and sentence warrants remand for correction. Mr. Quintanilla contends the court violated RCW 9.94A.760(1) by failing to total the amount for LFOs.

Preliminarily, the State argues this issue may not be raised for the first time on appeal. Under RAP 2.5(a)(3), manifest errors implicating a specifically identified constitutional right may be raised for the first time on appeal. In *State v. Blazina,* 174 Wn. App. 906, 911, 301 P.3d 492, *review granted,* ___ Wn.2d ___ (2013), Division Two of this court held that LFO issues may not be raised for the first time on appeal. The Supreme Court recently granted review of *Blazina.*

Here, the LFO error raised appears purely clerical and is not, in any event, a manifest error implicating a specifically identified constitutional right. Although not totaled, each of the individual LFOs is separately listed on the face of the judgment and sentence. Moreover, under RCW 9.94A.760(1) the court may total the amount of LFOs on either "the judgment and sentence *or on a subsequent order to pay.*" (Emphasis added.) A subsequent order is typically entered when an offender begins paying LFOs. Thus, this clerical omission can, in the interests of judicial economy, be corrected at a later time without prejudice to Mr. Quintanilla. Accordingly, there is no reversible error.

No. 30769-7-III
*State v. Quintanilla*

Affirmed.

_____
Brown, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.