FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8:58

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45353-3-II |
| Respondent, | |
| v. | |
| BRYAN ALLEN WEAVER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Bryan Allen Weaver appeals his conviction for first degree trafficking in stolen property. Weaver argues that the trial court erred by (1) admitting evidence that he concealed himself from the arresting sheriff's deputies and (2) imposing legal financial obligations (LFOs) without considering his financial resources. He requests reversal and remand for a new trial or, alternatively, remand for resentencing. Holding that (1) the trial court did not err in admitting evidence of Weaver's concealment, but if it did the error was harmless, and (2) Weaver cannot object to the imposition of LFOs for the first time on appeal, we affirm.

FACTS

A school bus driver reported to the Cowlitz County Sheriff's Office that she had observed two men in a car circle a parking lot and stop at a drain grate. The two men got out of the car and looked at the grate; the driver got back in the driver's seat and the passenger directed the driver

closer to the grate. The passenger picked up the grate, placed it in the car's trunk, and got back in the car before the driver sped out of the parking lot.

Later than same day, using the license plate number and vehicle description provided by the bus driver, sheriff deputies contacted Bryan Allen Weaver and his friend, Louis Hardrock Younger. Before questioning Weaver, one of the deputies advised Weaver of his *Miranda*[1] rights and asked him if he would give a statement about the incident. Weaver said that he and his girlfriend had used the car described by the bus driver to collect scrap metal and admitted that he met with Younger in the parking lot earlier that day. Weaver explained that Younger had put "something" in the car's trunk, although Weaver didn't know what the object was, and the two of them exchanged the object at a scrap metal shop for nine dollars. Verbatim Report of Proceedings (VRP) at 67. A receipt obtained by the deputies confirms that Weaver sold metal at the scrap shop that day.

The day after Weaver's interview, deputies arrested Younger in his home, which was across the street from Weaver's home. The deputies then crossed the street to arrest Weaver. Cheryl Rapp, Weaver's girlfriend's mother, directed the deputies to look for Weaver outside, but they were unable to locate him. Returning to the inside of the home, one of the deputies found Weaver in a child's bedroom under a pile of "blankets on the floor that were moving." VRP at 56. Rapp pulled back the blankets, but Weaver ignored both deputies and continued his "sleeping ruse" until they announced their presence and asked him to show his hands.[2] VRP at 57. The State,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Before trial, Weaver objected to this testimony as irrelevant and unduly prejudicial. The trial court overruled Weaver's objection and allowed the testimony.

during closing argument, told the jury that Weaver had been "hiding" from arrest for an offense that "he [knew he was] a suspect in." VRP at 112.

The jury returned a guilty verdict on one count of first degree trafficking in stolen property. At sentencing, the trial court imposed LFOs.[3] In its judgment and sentence, the trial court included boilerplate language stating that it found Weaver had the ability to pay or "likely future ability to pay" the imposed LFOs. Clerk's Paper at 31. Weaver appeals.

## ANALYSIS

### I. EVIDENCE OF CONCEALMENT

Weaver argues that the trial court abused its discretion when it admitted evidence that he concealed himself from the deputies because the evidence was not probative and the trial court did not conduct any analysis on the record regarding its admissibility. The trial court did not err, but if it had erred the error was harmless.

### A. Consciousness of Guilt Inference

We review evidentiary rulings for abuse of discretion. *State v. Franklin*, 180 Wn.2d 371, 377 n.2, 325 P.3d 159 (2014). A trial court abuses its discretion when the decision was manifestly unreasonable or based upon untenable grounds or reasons. *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014).

Evidence of concealment is analyzed under the same rules as evidence of flight because our law does not define what circumstances constitute flight. *State v. McDaniel*, 155 Wn. App.

---

[3] The trial court imposed the following LFOs: (1) $500.00 for the victim penalty assessment, (2) $600.00 in court costs, (3) $825.00 for a court appointed attorney, (4) $100.00 for the DNA (deoxyribonucleic acid) collection fee, and (5) $149.19 in restitution.

829, 854, 230 P.3d 245 (2010). Evidence of concealment is admissible "if the trier of fact can reasonably infer the defendant's consciousness of guilt of the charged crime." *McDaniel*, 155 Wn. App. at 854. Because such evidence tends to only be "marginally probative" as to the person's guilt or innocence, the inference of consciousness of guilt must be "substantial and real, not speculative, conjectural, or fanciful." *State v. Freeburg*, 105 Wn. App. 492, 498, 20 P.3d 984 (2001). The probative value of evidence of concealment depends on the "'degree of confidence'" with which four inferences can be drawn from the circumstances of the defendant's arrest: (1) from the defendant's behavior to concealment; (2) from concealment to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *McDaniel*, 155 Wn. App. at 854 (quoting *Freeburg*, 105 Wn. App. at 498).

The trial court did not abuse its discretion in admitting evidence of Weaver's concealment because the circumstances of Weaver's arrest lead to an inference that he concealed himself from the officers. At the time officers came to his home to arrest him, Weaver knew that deputies suspected that he stole the metal grate because they had interviewed him about it. He admitted to the deputies that he was at the parking lot with Younger and that he sold the object that Younger put in the trunk at the scrap shop that day; he claimed only to not know what the object was. Before the officers came to his home to arrest him, they had just arrested Younger across the street. One of the deputies found Weaver under blankets in a child's bedroom after Rapp had directed the deputies to look for Weaver outside.

Considering the entirety of the circumstances of the deputies' investigation and Weaver's knowledge of it, the jury could have reasonably inferred that Weaver's concealment demonstrated

4

his consciousness of guilt of the charged crime. The trial court did not abuse its discretion by admitting this evidence.

## B. Harmless Error

Weaver next argues that the testimony that deputies found Weaver underneath blankets in a child's bedroom, after they were looking for him to arrest him, had a reasonable probability of materially affecting the trial outcome because the State used this evidence to argue that the jurors should find Weaver guilty. We disagree.

Erroneous admission of evidence is grounds for reversal only if the error was prejudicial. *Garcia*, 179 Wn.2d at 848. An error is "'not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Garcia*, 179 Wn.2d at 848 (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)). Where improperly admitted evidence was of "minor significance" compared to the evidence as a whole, the error was harmless. *Bourgeois*, 133 Wn.2d at 403.

Even if admission of Weaver's concealment was in error, we conclude that there is no reasonable probability that the trial outcome would have been different had the trial court excluded this evidence. The bus driver observed two men drive around a parking lot and stop to look at a drain grate; one of the men drove closer to the grate and the other man threw the grate in the trunk before they drove off. Weaver admitted to being in the parking lot with Younger and in the car described by the bus driver, and to exchanging the object that Younger put in the trunk at a scrap metal shop. He claimed only to not have known what the object was. Evidence of Weaver's concealment cannot be said to have affected the trial outcome.

## II. IMPOSITION OF LFOs

Weaver next argues that the trial court erroneously imposed LFOs because it did not discuss on the record his ability to pay them.[4] In its judgment and sentence, the trial court found that Weaver had the ability to pay its imposed LFOs after considering Weaver's financial resources. Weaver did not object to this finding or to the trial court's imposition of LFOs. Because Weaver did not object below, we decline to address the merits of his claim of error on appeal.

RCW 10.01.160(3) prohibits the trial court from imposing LFOs unless the defendant has or will have the ability to pay them. To determine the proper dollar amount to impose, the trial court must consider the defendant's financial resources and the "nature of the burden that payment of costs will impose." RCW 10.01.160(3). The trial court is not *constitutionally* required to make these considerations at sentencing, however. *State v. Blank*, 131 Wn.2d 230, 241-42, 930 P.2d 1213 (1997). The trial court is not required to make formal findings on the defendant's ability to pay until the State seeks to collect payment of LFOs. *Blank*, 131 Wn.2d 242.

If a claim of error is not of constitutional magnitude and the appellant did not raise it in the trial court, we may refuse to review the claim of error under RAP 2.5(a). All three divisions of our court have held that a defendant's failure to object to the trial court's imposition of discretionary LFOs at the time of sentencing is a failure to preserve error on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *reviewed granted*, 178 Wn.2d 1010 (2013); *State*

---

[4] Weaver does not challenge the imposition of the $500.00 victim penalty assessment, the $100.00 DNA collection fee, or the $149.19 in restitution. He challenges only the discretionary LFOs of $600.00 in court costs and $825.00 for his court-appointed attorney.

*v. Calvin*, 176 Wn. App. 1, 316 P.3d 496, 507-08 (2013), *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013); *State v. Duncan*, 180 Wn. App. 245, 253, 327 P.3d 699 (2014). Although Division Two considered the merits of Bertrand's claim of error for imposition of LFOs in *State v. Bertrand*,[5] we are not compelled to do so in every case. *Blazina*, 174 Wn. App. at 911 (explaining that review of Bertrand's claim was warranted because she had disabilities that might reduce her future ability to pay, but nothing suggested that Blazina's case was similar to compel review of his claim). Here, like *Blazina*, the record does not suggest that Weaver faces unique circumstances that should compel us to review the trial court's imposition of LFOs. Thus, because Weaver did not preserve the issue for appeal, we decline to address the merits of his appeal on this issue.

We affirm, holding that (1) the trial court's admission of evidence of Weaver's concealment was not erroneous but would have been harmless if admission was in error and (2)

---

[5] *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012).

No. 45353-3-II

Weaver cannot raise his objection to the trial court's imposition of LFOs for the first time on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Worswick, P.J.

Melnick, J.

8