FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 03

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45922-1-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| DARRELL BERRIAN, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury returned verdicts finding Darrell Berrian guilty of attempted first degree robbery, second degree assault, and first degree unlawful possession of a firearm. The jury also returned special verdicts finding that Berrian was armed with a firearm during his commission of first degree robbery and second degree assault.[1] Berrian appeals his convictions, asserting that (1) the prosecutor committed misconduct at closing argument by implying that Berrian had committed uncharged offenses and (2) his counsel was ineffective for failing to object to the misconduct and for failing to request a curative instruction. Berrian also appeals his sentence, asserting that the trial court erred by imposing legal financial obligations (LFOs) without considering his ability to pay the LFOs. Additionally, Berrian raises several issues in his

---

[1] At sentencing, the trial court dismissed Berrian's second degree assault conviction on double jeopardy grounds.

statement of additional grounds for review (SAG) that ultimately fail to establish grounds for relief from his conviction or resulting sentence. We affirm.

FACTS

At approximately 8:00 a.m. on July 7, 2013, Saroeun Dy went to an AM/PM gas station in Tacoma to check on the status of his lottery ticket. Dy exited the store a couple minutes later and returned to his vehicle. As Dy was opening his door, a man wearing a backpack came up from behind him, pointed a gun at him, and told Dy to hand over his keys. Dy grabbed the barrel of the gun. The man then punched Dy's face and hit the back of Dy's head twice with the gun before fleeing the scene. After the man fled, Dy went back in the store and asked the clerk to call the police.

Tacoma Police Officer Brandon Cockcroft arrived at the AM/PM at 8:19 a.m. in response to Dy's report of an attempted robbery. Dy described the robbery suspect's appearance to Cockcroft. That same morning, Tacoma Police Officer Samuel Lopez-Sanchez saw Berrian walking about four blocks from the AM/PM; Berrian was not wearing a backpack at the time. Believing that Berrian matched Dy's description of the robbery suspect, Lopez-Sanchez stopped Berrian, frisked him for weapons, and read him his *Miranda*[2] rights. Berrian initially explained to Lopez-Sanchez that he had been walking from a nearby apartment complex but, upon further questioning, told Lopez-Sanchez that he had been walking from a different direction and had been looking for prostitutes. Berrian acknowledged that he did not have any money to pay for a prostitute.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

After learning that a potential suspect was in custody, Cockcroft transported Dy to Berrian's location to confirm whether Berrian was the man that Dy alleged had tried to rob him. After seeing Berrian, Dy told Cockcroft, "[T]hat's him 100 percent." Report of Proceedings (RP) (Jan. 7, 2014) at 83.

Two days later, on July 9, 2013, Tacoma Police Officer Gerald Turney went to a location two blocks from the AM/PM in response to a report that two children had found a handgun. Turney recovered a loaded .40 caliber semiautomatic handgun from the location. Turney also found a black backpack in some bushes just down the street from where he had recovered the handgun. The backpack contained clothing, several documents, and two cell phones. One of the cell phones contained a photograph of Berrian as well as two photographs of a handgun identical to the handgun that Turney had retrieved nearby. A majority of the documents contained in the backpack consisted of mail addressed to people other than Berrian. One of the documents was a traffic citation that had been issued to Berrian on June 6, 2013.

On January 10, 2014, the State charged Berrian by amended information with attempted first degree robbery, second degree assault, and first degree unlawful possession of a firearm. The State further alleged that Berrian committed attempted first degree robbery and second degree assault while armed with a firearm. At trial, the State presented witness testimony that was consistent with the facts as stated above. The State also presented security video footage of the incident. In the video, the suspect can be seen carrying a backpack with a logo similar to that on the backpack later retrieved near the scene. The video also shows the suspect wearing clothing similar to the clothing found in the backpack. Additionally, the State presented an audio recording of a phone call placed from the Pierce County Jail that was initiated with the individual

pin number that had been assigned to Berrian. In this call the inmate can be heard asking a woman to go to an area near the AM/PM to look for his backpack.

During its closing argument, the State made a short reference to the documents contained in the backpack that did not contain Berrian's name, stating:

> It is his backpack and his gun. Why do I say that? Look at the evidence that tells you it's his backpack. One, there's a traffic citation for him in the backpack. Now, that in and of itself isn't going to tell you much because there's hundreds of papers in there with various names on them. So it's hard to say just because of the traffic citation alone that this is the defendant's backpack.

RP (Jan. 9, 2014) at 64. Defense counsel argued at closing that the other documents in the backpack created a reasonable doubt that the backpack belonged to Berrian, stating:

> Now, there's one piece of paper that has Darrell Berrian's name on it versus hundreds of pieces of paper—I don't know about the number, I didn't think there was quite that many, but lots of pieces of paper with other people's names on them. And two of these people have the same address. Two of the people Franklin, I don't know if they're married, but have the same last name, personal papers. Did [police officers] go and talk to either one of the Franklin's and say, hey, is this your backpack? It has all your stuff in it, is this yours? No. If they had done that, it would be a whole different situation because either one of the Franklins will say, yeah, you're right that's my backpack. Whatever reason, it got stuck over here in this area on Pacific Avenue. Thank you. Or no. But you don't have that determination. You don't have that kind of evidence that really hammers home for you certainly that this is Darrell's backpack.

RP (Jan. 9, 2014) at 78. Defense counsel also argued that there was a reasonable doubt that Berrian had possessed the handgun retrieved near the AM/PM because police did not determine who owned the gun, did not find fingerprints on the gun, and did not find deoxyribonucleic acid (DNA) on the gun. Then, during its rebuttal closing argument, the State referred to defense counsel's arguments regarding the other documents found in the backpack and the handgun, stating:

4

[Defense counsel] said, a missing piece of the puzzle is the mail from Mrs. and Mr. Cothers or Ms. Franklin. There was the bulk of the documents in the backpack. There's only one citation or one piece of documentation for the defendant. Well, what would that tell you[?] If they came in here, what would that tell you[?] We can all surmise, by the way, what their mail is doing—what their financial documents are doing in this backpack. But why is all their mail—

RP (Jan. 9, 2014) at 90. At this point, defense counsel objected, and the trial court sustained the objection. The State continued:

Why is all their mail in a backpack with clothing used in a robbery? Why is all that mail in there with a phone that has the defendant's image on it? What are they really going to tell you?

You're told [by defense counsel] that there was a missing piece because we don't know who the owner of the gun is. Well, here's what we do know. It ain't the defendant who's the owner of the gun. You also may know if you're a firearm owner that there's no place that you register your gun that we can just go and determine who owns a gun. We know that that gun don't belong to the defendant because he's a felon.

RP (Jan. 9, 2014) at 91. Defense counsel did not again object to the State's argument. The jury returned verdicts finding Berrian guilty of attempted first degree robbery, second degree assault, and first degree unlawful possession of a firearm, and returned special verdicts finding that Berrian was armed with a firearm during his commission of first degree robbery and second degree assault. The trial court dismissed Berrian's second degree assault conviction on double jeopardy grounds. The trial court also imposed certain LFOs. Although the trial court did not address Berrian's ability to pay the imposed LFOs at his sentencing hearing, Berrian's judgment and sentence includes a preprinted finding that he had the ability to pay the imposed LFOs. Berrian appeals his convictions and sentence.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Berrian first contends that the prosecutor committed misconduct during its rebuttal closing argument by implying that he had committed uncharged offenses. We disagree.

5

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). We review a prosecutor's statements at closing in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003); *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). A prosecutor has wide latitude in making arguments to the jury and may draw reasonable inferences from the evidence. *Fisher*, 165 Wn.2d at 747. Because Berrian did not object to the portion of the State's closing argument that he now asserts constituted misconduct, he must demonstrate that the misconduct was "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" and was incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

Berrian asserts that the following statements by the State at closing argument improperly suggested to the jury that he was guilty of committing uncharged offenses and, thus, constituted flagrant misconduct requiring reversal of his convictions:

> Why is all their mail in a backpack with clothing used in a robbery? Why is all that mail in there with a phone that has the defendant's image on it? What are they really going to tell you?
> You're told [by defense counsel] that there was a missing piece because we don't know who the owner of the gun is. Well, here's what we do know. It ain't the defendant who's the owner of the gun. You also may know if you're a firearm owner that there's no place that you register your gun that we can just go and determine who owns a gun. We know that that gun don't belong to the defendant because he's a felon.

RP (Jan. 9, 2014) at 91. In asserting that the above statements constituted flagrant misconduct requiring reversal of his convictions, Berrian relies on our decision in *State v. Boehning*, 127 Wn. App. 511, 111 P.3d 899 (2005). Berrian's reliance is misplaced. In *Boehning*, the State

6

referred to additional rape charges that it had filed but which were dismissed after the State rested its case. 127 Wn. App. at 517. The State in *Boehning* argued that the dismissed charges were supported by the victim's inadmissible out-of-court statements. 127 Wn. App. at 519-22. We held in *Boehning*:

> That the prosecutor dropped the three rape charges was not "evidence" from which reasonable inferences and arguments about the molestation charges could be made. "[E]vidence" is "[s]omething (including *testimony, documents, and tangible objects*) that tends to prove or disprove the existence of an alleged fact." BLACK'S LAW DICTIONARY 595 (8th ed. 2004) (emphasis added). Moreover, the dismissed rape charges were wholly irrelevant to the State's case, and no reasonable inference regarding the content of H.R.'s out-of-court statements flows from the three dismissed rape counts or her reluctance to describe the abuse at trial. The prosecutor was not raising reasonable inferences and arguments based on the evidence at trial.

> The prosecutor's repeated references to the dismissed rape counts and suggestions that H.R.'s statements supported those charges were uncalled for and impermissibly asked the jury to infer that Boehning was guilty of crimes that had been dismissed and were not supported by trial testimony. *See State v. Torres*, 16 Wn. App. 254, 256, 554 P.2d 1069 (1976). Such argument improperly appealed to the passion and prejudice of the jury and invited the jury to determine guilt based on improper grounds. This error alone compels reversal.

127 Wn. App. at 522.

*Boehning* is distinguishable from the present case. Unlike in *Boehning*, here the State did not specifically reference any uncharged offenses in its closing arguments. Rather, the State's argument was confined to the evidence at trial; namely, the presence of documents in the backpack that did not belong to Berrian and witness testimony that police did not confirm whether the backpack belonged to one of the individuals named in the documents, did not determine the owner of the firearm, and did not find any fingerprints or DNA on the firearm. The State argued also from Berrian's stipulation that he had been convicted of a serious felony

offense "prohibit[ing] him from *owning* or possessing a firearm." Clerk's Papers (CP) at 34 (emphasis added).[3]

With regard to the documents, the State did not argue that the presence of these documents showed that Berrian was guilty of uncharged offenses but, rather, invited the jury to apply its common sense to find an explanation for the documents' presence in the backpack apart from possession of the backpack by one of the individuals named in the documents it contained. This argument regarding the presence of the documents was a fair response to defense counsel's suggestion at closing that the State failed to meet its burden of proof because police did not confirm whether the backpack belonged to one of the individuals named in the documents. *See, e.g., State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994) ("It is not misconduct . . . for a prosecutor to argue that the evidence does not support the defense theory . . . [and] the prosecutor . . . is entitled to make a fair response to the arguments of defense counsel.").

Similarly, with regard to the firearm, the prosecutor did not argue that Berrian committed an uncharged offense but, rather, fairly responded to defense counsel's argument that the State had failed to present evidence showing who owned the firearm and failed to collect any fingerprints or DNA from the firearm. Because the prosecutor's rebuttal closing argument did

---

[3] In its entirety, Berrian's stipulation provided:

> Prior to July 7, 2013, the defendant had been convicted of a "serious" felony offense, as that term is defined by RCW 9.41.010(1), that prohibited him from owning or possessing a firearm. The defendant's conviction was valid on July 7, 2013. At the time of his conviction, the defendant was informed that he was not allowed to own or possess any firearm from that date forward until a court restored his right to do so. As of July 7, 2013, the defendant's right to own or possess a firearm had not been restored.
>
> The content of this stipulation shall be deemed by the jury as proved beyond a reasonable doubt.

CP at 34-35.

not refer to evidence outside the record and because the prosecutor's challenged statements were made in fair response to arguments raised by defense counsel, Berrian fails to show that such statements were improper. Thus, his prosecutorial misconduct claim fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Berrian contends that his defense counsel was ineffective for failing to object to the prosecutor's statements addressed above and for failing to request a curative instruction with regard to those same statements. We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, Berrian must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Performance is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results if the outcome of the trial would have been different had defense counsel not rendered deficient performance. *McFarland*, 127 Wn.2d at 337. Because we have held that the prosecutor's challenged statements were proper, Berrian cannot show deficient performance or resulting prejudice either from defense counsel's failure to object to those statements or from defense counsel's failure to request a limiting instruction.

## III. LEGAL FINANCIAL OBLIGATIONS

Next, Berrian contends that the trial court erred by imposing LFOs without first considering his ability to pay the LFOs. Berrian's judgment and sentence contains a preprinted finding that he had the ability to pay the imposed LFOs. Berrian did not challenge this finding during sentencing, which occurred after our decision in *State v. Blazina*, 174 Wn. App. 906, 911,

301 P.3d 492 (2013), and before the Supreme Court's reversal of that decision in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) (affirming Court of Appeals' exercise of discretion to refuse to address issue raised for the first time on appeal, but exercising its own discretion to reach the issue and remand to trial court for further proceedings). In *State v. Lyle*, ___ P.3d ___, 2015 WL 4156773 (Wash. App. Div. 2 July 10, 2015), we held that parties who failed to challenge LFOs in sentencings after our decision in *Blazina* have waived those challenges. Under *Lyle*, Berrian has waived his LFO challenge.[4]

## IV. SAG

Next, Berrian raises several claims of error in his SAG, which we address in turn.

A.    <u>Timely Trial</u>

Berrian first asserts in his SAG that the trial court erred by granting a trial continuance based on his defense counsel's vacation, thereby violating his timely trial right. It appears that Berrian is challenging the trial court's grant of a continuance on August 12, 2013, in which the trial court's written order continuing trial indicates that defense counsel was on leave on the scheduled trial date of August 27, 2013. It is unclear whether the "leave" referred to in the order was for a vacation. At the hearing addressing the continuance motion, defense counsel requested a continuance, over Berrian's objection, to allow him to adequately prepare a defense, and defense counsel indicated that his investigator was awaiting certain information.

CrR 3.3(f)(2) provides a basis by which a trial court may validly continue the start of trial, stating:

> On motion of the court or a party, the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense. . . . The court must state on the record or in writing the reasons for the continuance.

---

[4] Judge Bjorgen dissented in *Lyle*, but follows its holding under principles of stare decisis.

The bringing of such motion by or on behalf of any party waives that party's objection to the requested delay.

We will not disturb a trial court's grant or denial of a continuance motion absent a showing of manifest abuse of discretion. *State v. Cannon*, 130 Wn.2d 313, 326, 922 P.2d 1293 (1996). A trial court abuses its discretion only where it bases its decision on untenable grounds or reasons. *State v. Williams*, 104 Wn. App. 516, 521, 17 P.3d 648 (2001).

Here, allowing counsel adequate time to prepare a defense is a valid reason to support the granting of a continuance under CrR 3.3. *See, e.g., State v. Campbell*, 103 Wn.2d 1, 14-15, 691 P.2d 929 (1984). Further, Berrian does not argue that he was prejudiced in the presentation of his defense by the trial court's granting of the continuance. Accordingly, the trial court acted within its proper discretion by granting defense counsel's continuance motion and, thus, the time period of the continuance was properly excluded from Berrian's time for trial period. CrR 3.3(b)(5), (e)(3), (f)(2). Therefore, Berrian fails to show a violation of his right to a timely trial.

B. Witness Identification

Next, Berrian appears to argue that his due process rights were violated by Dy's testimony identifying him as the person who had assaulted and attempted to rob Dy, but the nature of Berrian's argument on this issue is not sufficiently developed to merit judicial review.[5] Accordingly, we do not further address it. *See* RAP 10.10(c) ("[A]ppellate court will not consider a defendant's [SAG] for review if it does not inform the court of the nature and occurrence of alleged errors.").

---

[5] Specifically, Berrian asserts in his SAG:
> Violation of my DUE PROCESS when Saroeun Dy testified about the identification[.] Dy['s] testimony was about what he seen [sic] when he was driving to the scene not the description giving [sic] to officers[.] Dy doesn't understand or speak English to give a description to officers.

SAG at 1.

11

C.    Discovery

Next, Berrian argues that the State failed to provide him with requested discovery materials. However, there is nothing in the record before us to support this claim. To the extent that facts outside the record support Berrian's claim, we cannot address those facts in his direct appeal. *See McFarland,* 127 Wn.2d at 335 ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

D.    Ineffective Assistance of Counsel

Next, Berrian argues that his counsel was ineffective for failing to file numerous discretionary review motions and other motions upon Berrian's request to do so. It is unclear which motions Berrian is referring to. In the record before us, we have located only one reference to a request by Berrian for his counsel to file a discretionary review motion and the record shows that defense counsel had filed that motion. At sentencing, defense counsel stated:

> There has also been a motion—I believe Mr. Berrian filed a Motion for Discretionary Review to the Supreme Court. And then on his instruction, I filed a Motion for Discretionary Review to the Court of Appeals. Both of those motions address the court's evidentiary ruling pertaining to the showup identification.

RP (Feb. 14, 2014) at 7-8. To the extent that Berrian is referring to different motions that he contends defense counsel failed to file, the substance of those motions is not in the record before us. Accordingly, we do not further address this issue. *McFarland,* 127 Wn.2d at 335.

E.    Weight of the Evidence

Next, Berrian raises several claims regarding the weight of the evidence supporting his guilty verdicts. Specifically, Berrian directs our attention to the State's failure to locate fingerprints or DNA on the firearm, the poor quality of the security video footage showing the assault and robbery, and the short amount of time in which Dy witnessed the person assaulting

and attempting to rob him. But, as an appellate court, we cannot determine witness credibility or reweigh the evidence. *State v. McCreven*, 170 Wn. App. 444, 481, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013). Accordingly, we do address this issue further.

F.      Cross-Racial Identification Jury Instruction

Next, Berrian argues that the trial court erred by failing to give defense counsel's proposed cross-racial identification jury instruction, which proposed instruction stated:

> In this case, the defendant, Darrell Berrian, is of a different race than Saroeun Dy, the witness who has identified him. You may consider, if you think it is appropriate to do so, whether the fact that the defendant is of a different race than the witness has affected the accuracy of the witness' original perception or the accuracy of a later identification. You should consider that in ordinary human experience, some people may have greater difficulty in accurately identifying members of a different race than they do in identifying members of their own race. You may also consider whether there are other factors present in this case which overcome any such difficulty of identification.

CP at 47. In *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013), our Supreme Court declined to adopt a general rule requiring trial courts to give cross-racial identification jury instructions where cross-racial identification was at issue in the case. In concluding that the trial court did not abuse its discretion by failing to give a cross-racial identification instruction under the particular facts of the case, the *Allen* court noted that Allen's proposed instruction did not explain any scientific foundation for the proposition that people have greater difficulty in accurately identifying members of a different race and, thus, the instruction "would have been misleading and counterproductive." 176 Wn.2d at 625. Defense counsel's proposed instruction here similarly did not provide any scientific foundation for cross-racial bias and, even if it had provided such scientific foundation, defense did not present any expert testimony at trial to support such scientific foundation. Accordingly, following *Allen*, we conclude that the trial court

did not abuse its discretion by declining to give defense counsel's proposed jury instruction on cross-racial identification.

G.      Admission of Jail Telephone Call Recordings

Finally, Berrian argues that the trial court erred by admitting recordings of telephone calls made from the Pierce County Jail because the State failed to present evidence that Berrian had made those phone calls. We disagree.

ER 901 requires that telephone recordings be properly authenticated or identified before being admitted as evidence at trial. *State v. Williams*, 136 Wn. App. 486, 500, 150 P.3d 111 (2007). The party seeking to admit the recording, here the State, must present evidence sufficient to support a finding that the matter in question is what its proponent claims. *Williams*, 136 Wn. App. at 500. "A sound recording, in particular, need not be authenticated by a witness with personal knowledge of the events recorded. Rather, the trial court may consider any information sufficient to support the prima facie showing that the evidence is authentic." *Williams*, 136 Wn. App. at 500. Here, the State presented evidence that the telephone calls at issue were made using Berrian's assigned inmate identification number. Additionally, in its offer of proof, the State played the telephone recordings to the trial court in which a male inmate can be heard asking someone named "Courtney" to look for a backpack near the location of the AM/PM where Dy was assaulted. RP (Jan. 8, 2014) at 79; Ex. 21B. Finally, the State presented evidence that someone named "Courtney Berrian" had visited Berrian at the jail. RP (Jan. 9, 2014) at 36. Taken together, the State's evidence was sufficient to meet the authentication requirements of ER 901.

14

We affirm Berrian's convictions and resulting sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

SUTTON, J.